492 P.2d 1178

**STATE of Arizona, Appellee,**

v.

**Richard Murillo NUNEZ, Appellant.**

**No. 2273.**

Supreme Court of Arizona,
In Banc.
Jan. 13, 1972.

Gary K. Nelson, Atty. Gen., by Paul J. Prato, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

UDALL, Vice Chief Justice:

The appellant, Richard Murillo Nunez, hereinafter referred to as the "defendant" appeals from a judgment entered upon a jury verdict finding him guilty of robbery and from a sentence imposed thereon placing him on probation for five years on the condition that he spend one year incarcerated in the Maricopa County jail.

Defendant was charged with the crime of robbing Victor Zavarella on the 30th day of July, 1970. Prior to the beginning of the trial the defendant moved to suppress any in-court identification of him by the victim. A hearing out of the presence of the jury was held. The victim testified that he was a taxicab driver with the Yellow Cab Company at the time of the alleged crime and that on the night of July 30, 1970 he was robbed by three youths in his taxicab; that he immediately reported the robbery over his cab radio after the assailants had fled, and that within approximately 15 minutes the police had apprehended the defendant and one Raymond Verduzco; that the two suspects were brought in separate patrol cars along with several other suspects to the corner of 11th and Taylor Streets where the victim made a tentative identification of each of them. The motion to suppress was denied.

The question presented on appeal by the defendant reads as follows:

Was the defendant denied the effective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and his right to due process of law under the Fourteenth Amendment to the United States Constitution by the trial court's denial of his motion to suppress any in-court identification of him by the victim Zavarella?

It is the contention of the defendant that his constitutional rights were violated in that he was not given an attorney to represent him both at the time he was first identified by the victim and next when he was identified in a line-up approximately 25 minutes after his arrest.

The testimony shows that on the night of July 30, 1970 the victim Zavarella received a call to drive to 10th Street and Pierce to pick up some passengers. When Zavarella arrived at the designated place he saw three young Mexican-Americans standing at the corner. After he stopped, two of them got in the back seat and one in the front seat beside him. Zavarella then turned on the dome light to write down the time and the destination. The inside of the taxi was well lighted and Zavarella testified he looked at the person in the right front seat and turned and looked at the person sitting in the right rear seat. He started to drive away to the designated destination and had gone approximately one-half block when he was ordered to "[p]ull over toward the corner." The person in the rear then demanded his money. Zavarella turned over to them a roll of bills and upon demand all his change. At one point during all this, Zavarella glanced back and observed the party in the rear right of the car and at the same time noticed that there was a blue revolver being held against his head. Shortly thereafter the two parties on the right side of the car both opened the doors and got out. The robber in the right rear at first threatened to shoot Zavarella but fled without harming him.

The three robbers then fled from the scene and when they had gone a reasonable distance the victim radioed the police and within the course of 15 or 20 minutes two of the suspects were apprehended by the police and were brought in separate cars to the point where the victim had driven the taxi after the robbery. The victim testified that he had two opportunities to see the person in the right rear seat. First, he saw him for about three seconds when he got into the car and briefly when Zavarella

turned his head to see him and the revolver just before they all left.

The victim further testified that the police first brought two Mexican-American boys to him, and he told them that they were not the two involved. Then a second police car came and he testified he looked in the car and said (pointing to Nunez, defendant), that "I'm pretty sure that's him, a little reservedly." He further stated that he walked back to the third car and there identified Verduzco who had been seated beside him during the robbery. He then went back to the second car and looked at Nunez again, and stated "Yes, that is the one that was in the right rear." The victim further identified the clothing worn by both suspects as the same clothing that was worn by the robbers.

Some 30 minutes later at the police station the victim was shown a police line-up in which 5 persons of Mexican-American descent were exhibited. At that time, the victim without hesitation picked from the line-up Nunez and Verduzco.

The defendant contends that the defendant was entitled to be represented by counsel at the time of the line-up, and that the line-up procedure was inherently unfair since the defendant was the only one of the 5 who had a particular kind of beard that tended to set him apart from the others. Accordingly, it was argued that the defendant was denied due process because of the unfair manner in which the line-up was conducted.

It was claimed by the defendant that he was entitled counsel at the line-up and the cases of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 were cited as authority for the proposition that a line-up is a critical stage of criminal proceedings and that the defendant is entitled to be represented by counsel at such time.

■ It is the position of the State that the law as announced in *Wade* and *Gilbert* applies to post-indictment line-ups and that the line-up conducted in the instant case was carried out after the defendant had been identified by the victim. The majority opinion in *Wade* limited the holding to post-indictment line-ups and did not extend the holding to pre-indictment situations.

In State v. Dessureault, 104 Ariz. 380, 453 P.2d 951 (1969) we followed the opinion in *Wade*, saying that "[w]e are not, however, prepared at this time to extend the application of *Wade* and *Gilbert* to pre-indictment or pre-information situations. . . . " 104 Ariz. at 382, 453 P.2d at 953. *Dessureault* is still the law of this jurisdiction and we decline to follow the request of the defendant that the rule of *Wade* and *Gilbert* be extended to all line-ups either held prior to the filing of an information or subsequent to it. See People v. Palmer, 41 Ill.2d 571, 244 N.E.2d 173 (1969).

Defendant further contends the pre-trial line-up was unduly suggestive and that the testimony relating to this identification should have been suppressed and that the in-court identification was irreparably tainted by the pre-trial identification procedures so as to render the in-court identification illegal.

■ Questions as to whether there has been an accurate in-court identification of the defendant untainted by prior identification procedures and whether these procedures followed were fair to the defendant are preliminary questions for the trial court. State v. Dessureault, supra; State v. Darby, 105 Ariz. 115, 460 P.2d 9 (1969); State v. Murray, 106 Ariz. 150, 472 P.2d 19 (1970). See also United States v. Wade, supra. This Court in *Dessureault* said:

"First, if at the trial the proposed in-court identification is challenged, the trial judge must immediately hold a hearing in the absence of the jury to determine from clear and convincing evidence whether it contained unduly suggestive circumstances. In this the burden is on the prosecution to establish from all the circumstances surrounding the pretrial identification that it was not such as to be unduly suggestive. 104 Ariz. at 384, 453 P.2d at 955."

In *Darby* we held such a determination will not be disturbed on appeal unless there is clear and manifest error. Upon the hearing on defendant's motion to suppress the in-court identification, the trial court made such a determination when it denied defendant's motion to suppress. State v. Murray, 106 Ariz. at 153, 472 P.2d 19.

We are of the opinion in viewing the totality of the circumstances surrounding the confrontations that they were not suggestive and conducive to an irreparable mistaken identification. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Since there was clear and convincing evidence of this, the trial court's determination will not be disturbed. We need not, though, dwell on this point. The reasoning behind *Wade, Gilbert,* and *Stovall* as well as *Dessureault* is clear. It is to protect the accused at a line-up from unfair suggestion or influence for "once a witness has picked out the accused at the line-up, he is not likely to go back on his word later on. . . ." United States v. Wade, 388 U.S. page 229, 87 S.Ct. page 1933, 18 L.Ed.2d page 1159. This reasoning has little application in the case at bar since defendant had already been positively identified at the scene and the inherent dangers contemplated by those cases were not present in the police station line-up which in this case merely served to confirm the initial identification.

The defendant argues that the at-the-scene identification followed closely in time by the police station line-up was somehow unnecessarily suggestive and conducive to a mistaken identification. We have previously approved such a procedure involving a "one-man showup" at the scene of the crime or near the time of the criminal act. See State v. Daniels, 106 Ariz. 224, 474 P.2d 815, and Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104 (1968). In the present case, an additional protection was afforded the defendant since he was picked out of a number of suspects brought by the police to the scene of the crime.

Certainly, an error if made at the police station line-up would not be such as to constitute reversible error in view of the identification made at the scene. Further, there was testimony by the victim that his in-court identification of the defendant was based on his observations of the defendant during the actual robbery.

Affirmed.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and CAMERON, JJ., concur.