549 P.2d 1060
**STATE of Arizona, Appellee,**

v.

**Ray Earl ARNOLD, Appellant.**

**No. 1 CA–CR 1479.**

Court of Appeals of Arizona,
Division 1,
Department C.

May 20, 1976.

Rehearing Denied June 8, 1976.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Frank T. Galati, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Rudy J. Gerber, Deputy Public Defender, Phoenix, for appellant.

## OPINION

EUBANK, Presiding Judge.

After a trial by jury, appellant was convicted of armed robbery and sentenced to not less than eight nor more than 13 years in the state prison. On appeal, he raises two issues: whether out-of-court identification procedures were unduly suggestive and tainted the subsequent in-court identification, and whether there was sufficient evidence to convict appellant.

On April 21, 1975, a man came onto Mr. G. Swing's property at 728 East Adams, in Phoenix, with a revolver in his hand and told him "This is a stickup." Mr. Swing thought he was joking, until the robber grabbed him, threw him down and kicked him in the face. As a result, Mr. Swing gave the robber all the money he had, approximately $40 and some change. Mr. L. Monreal witnessed the violence and robbery. Swing called the police, who responded within a matter of minutes. As the responding police officer drove up to Swing's apartment house, she saw appellant walking westward along Monroe Street. When she interviewed Swing and obtained a description of the robber, she realized that it fit appellant and radioed for other police officers to arrest appellant. Within three or four minutes of the first officer's arrival at the scene of the crime, appellant was apprehended and returned to Swing's apartment house. While appellant was seated in the rear of the police car, the police officers individually took Swing and Monreal to the car to view the appellant. Both Swing and Monreal positively identified appellant as the robber. Their identification took place approximately eleven minutes after the crime occurred.

■■ Appellant contends that this identification at the scene of the crime was unduly suggestive and inadmissible. However, we do not agree. Arizona has consistently held that a "one man showup" is not improper if it is conducted near the time of the crime or at the scene of the crime. *See State v. Gastelo*, 111 Ariz. 459, 532 P.2d 521 (1975); *State v. Nunez*, 108 Ariz. 71, 492 P.2d 1178 (1972); *State v. Daniels*, 106 Ariz. 224, 474 P.2d 815 (1970). In our opinion the "showup" was timely, properly conducted, and there is no evidence that it was unnecessarily suggestive.

■ Moreover, the identification was reliable under the test propounded in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In *Neil* the factors to be considered are, (1) the opporuntity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4)

the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. 409 U.S. at 199, 93 S.Ct. 375. In this case, although his glasses were knocked off by appellant, Swing had an opportunity to view appellant at very close range. Monreal viewed appellant for about three minutes during the course of the robbery. Both witnesses, of necessity, paid close attention to the robber because they were involved. In addition, the record shows that there was adequate lighting to see the robber; that the descriptions given the police accurately described the appellant; and that both witnesses were positive of their identification, which took place only eleven minutes after the crime. In light of the foregoing, the identification was reliable. Accordingly, because it was proper for the police to conduct the show-up, it is our opinion that it was proper to admit testimony regarding the showup into evidence.

Appellant also contends that a lineup subsequent to the showup tainted Monreal's in-court identification. The pertinent facts relating to this lineup are as follows.

On appellant's motion, the trial court ordered a pretrial lineup which was conducted the day before the trial. Although appellant had long hair and a drooping moustache at the time of the crime, he had his hair cut short and had shaved off his moustache immediately prior to the lineup. A comparison of his photograph at the time of his arrest with a photograph at the time of the lineup shows a substantial change in appellant's appearance.

Monreal was not present at the original lineup, but was shown a frontal photograph of the lineup. The prosecutor, the defense attorney and Officer Gonzales of the Phoenix Police Department, who acted as an interpreter for Monreal, were present when Monreal was shown this photograph.[1]

Monreal originally selected subject No. 5 from the photographs. Subject No. 5 was not appellant. Officer Gonzales asked Monreal why he picked No. 5, and Monreal replied that he had chosen No. 5 because he had long hair and a moustache. The prosecutor, through Officer Gonzales, asked Monreal which one he would select if he were to take the moustache and long hair off of No. 5. Monreal replied that he would pick No. 4. No. 4 was appellant.

At trial, Monreal identified appellant but stated there was "a lot of difference" between the appearance of appellant in the courtroom and at the time of the crime. Monreal stated that the changes were appellant's short haircut and his lack of a moustache. Nonetheless, Monreal believed appellant to be the robber.

A *Dessureault* hearing, *State v. Dessureault,* 104 Ariz. 380, 453 P.2d 951 (1969), *supplemented,* 104 Ariz. 439, 454 P.2d 981 (1969), *cert. den.,* 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970), which was conducted prior to the trial, dealt exclusively with the oneman showup. Appellant did not present any evidence concerning the lineup or raise any objections to the prosecutor's or Officer Gonzales' comments at the time of the lineup. Appellant's original memorandum in support of his motion to suppress the identification did not refer to the incident at the lineup. Further, appellant did not object at the time of Monreal's in-court identification. Finally, in appellant's motion for a new trial, he did not mention the incident.

The only possible objection to Monreal's in-court identification because of the incident at the lineup occurred at the close of the prosecution's case. At this time, appellant's attorney stated:

At this time I would renew the motion that I filed concerning the Deseralt [sic] problems in this case. I would ask the Court to strike from the record the testi-

---

1. Monreal stated that the prosecutor was not present but Officer Gonzales stated that the prosecutor was present. Apart from this, Monreal did not contradict Officer Gonzales' version of the lineup.

mony of both eyewitnesses and that I feel that the evidence has shown that their testimony in court was tainted by an illegal show of [sic] and suggestions made to them and prior to trial and for that reason I would ask the Court to strike their testimony.

■ However, appellant's attorney did not specifically indicate what the "suggestions" were, nor did he refer to the lineup itself at the time of this motion. Further, the motion was raised in the terms of a renewal of his original motion to suppress, and appellant's attorney did not indicate that he had any new information for the Court to consider. Error cannot be assigned on appeal except upon the grounds urged in the objection before the trial court. *State v. Loftis*, 89 Ariz. 403, 363 P.2d 585 (1961). In *State v. Dessureault, supra,* our Supreme Court stated:

. . . if the in-court identification is not challenged at the trial level, it will be presumed thereafter that prior identification procedures did not taint the in-court identification. This presumption we deem conclusive for the obvious reason that all litigation, even criminal, must end at some point. Matters which could have been determined by the mere asking, if not raised, will be deemed settled adversely to the accused. 104 Ariz. at 384, 453 P.2d at 955.

■ Moreover, because appellant failed to make a timely objection or draw this conduct to the attention of the trial court in a timely fashion, this Court does not have an adequate record on appeal to make a determination on this issue. The sole evidence regarding the lineup was brought out before the jury, and the testimony elicited by appellant's attorney impeached the credibility of the witness. If it was designed to serve the purposes of a *Dessureault* hearing, we feel that it was improper. A defendant should not be permitted to wait until trial to establish improper conduct when counsel knew of it prior to trial. To allow such a procedure would be to give the defendant the opportunity to create a mistrial simply by timing his objection until after the jury had heard evidence concerning the in-court identification.

■ Because we hold that appellant waived his objections to the in-court identification, we need not determine whether the prosecutor's conduct in the current case might have been improper, as ordinarily required by *State v. Lang*, 107 Ariz. 400, 489 P.2d 37 (1971) and *State v. Alexander*, 108 Ariz. 556, 503 P.2d 777 (1972).

The validity of the in-court identification by Swing similarly poses a difficult question because an adequate record was not made by either side at the trial court level. This lineup also was held on the day prior to trial at appellant's request, and Swing viewed the physical lineup rather than a photograph. Appellant's counsel was present at the lineup. Although the record is not clear, it appears that Swing initially indicated that he felt that subject No. 3 was the robber because of appellant's changed appearance. The record is contradictory about any remarks made to Swing by the prosecutor, and appellant contends that the prosecutor told Swing that the robber was subject No. 4.

■ However, appellant's attorney, although he was present at the lineup, did not object to the prosecutor's purported comment, nor did he raise the specific issue of the prosecutor's comment at the *Dessureault* hearing. Although appellant's attorney did object to the in-court identification during the examination of Swing, this objection was made before the incident at the lineup was brought out in the record. Further, appellant stated that this objection was based on his pretrial motion, but appellant's pretrial motion did not specifically refer to the prosecutor's misconduct. As in the case with Monreal, appellant's attorney did not refer to this incident at the time of his "renewal" of his motion at the conclusion of the prosecutor's case. Although appellant did make reference to the incident in his motion for a new trial, this was not until after the ap-

pellant was convicted. Because the appellant had ample opportunity to raise this issue prior to trial, we do not think that the motion after trial sufficiently preserves his objection for appeal.

Although the prosecutor may have behaved improperly, we cannot say that this misconduct rises to the level of fundamental error that would allow appellant to present the issue for the first time on appeal. Therefore, we hold that appellant has waived his right to object to any alleged misconduct by the prosecutor.

Finally, if appellant had not waived his right to object to the two lineups, the in-court identification does not necessarily have to be excluded. If the state can show by clear and convincing evidence that the in-court identification was not tainted by the prior identification, then the in-court identification will be permitted. *State v. Dessureault, supra.* In *State v. Miranda,* 109 Ariz. 337, 339, 509 P.2d 607, 609 (1973), our Supreme Court, quoting *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), identified six factors to be considered in making this determination:

> [T]he prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup. 388 U.S. at 241, 87 S.Ct. at 1940.

In this case, both witnesses had an opportunity to see appellant under adequate lighting conditions, and they were able to positively identify him within minutes after the crime. The only confusion in the identification was caused by appellant's dramatic change in appearance prior to the lineup and trial. At the lineups, to counteract this change, it appears the prosecutor asked the witnesses to disregard the hair and moustache styles of the subjects. Upon being informed that the hair and moustache style of the robber might have been changed, both witnesses immediately identified appellant as the robber. Although we do not encourage this procedure, we do not think it tainted the witnesses' identification of appellant, under the circumstances of this case.

Appellant's second question on appeal is that there was not sufficient evidence to convict him. Two eyewitnesses positively identified appellant as the robber at the scene of the crime within minutes after its commission. Their description of him and his clothing fit appellant, and led to his arrest immediately following the robbery. In spite of appellant's attempt to "camouflage" himself for the lineup and trial, both witnesses were able to recognize and identify him in the courtroom. In addition, a United Bank parking token (which was one of the objects taken from Swing) was found in appellant's possession. Finally, a gun matching the description of the weapon used by the robber was found in the direction appellant was walking when first observed by the police officer who responded to Swing's initial complaint. Although there are certain discrepancies in the evidence, we feel that they were for the jury to consider. The record shows that there was sufficient evidence to convict the appellant of the crime of armed robbery.

Judgment and sentence affirmed.

HAIRE, C. J., Division 1, and NELSON, J., concur.