NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

PAUL CLEMETH MELVILLE, JR., *Appellant.*

No. 1 CA-CR 13-0639
FILED 07-29-2014

---

Appeal from the Superior Court in Maricopa County
No. CR2012-009547-002
The Honorable Peter C. Reinstein, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Myles A. Braccio
*Counsel for Appellee*

Maricopa County Legal Defender's Office, Phoenix
By Cynthia D. Beck
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge John C. Gemmill joined.

_____

**C A T T A N I**, Judge:

¶1 Paul Clemeth Melville, Jr., appeals from his convictions of two counts of armed robbery and four counts of aggravated assault and the resulting sentences. Melville argues the superior court erred by allowing the State to impeach him by reference to a prior conviction. For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 In early November 2012, J.R. and L.N. stopped by an apartment to pick up L.C. on their way to a bar. The three were talking in the living room, just inside the doorway, when Melville and his father burst through the front door, guns drawn, and ordered them to the ground. Melville put a gun to J.R.'s head and ordered him to lie on the ground and be quiet, and Melville's father similarly ordered L.N. to the ground at gunpoint. Melville then pulled zip-ties from his waistband and bound all three victims' hands behind their backs.

¶3 Melville searched J.R.'s pockets, taking the victim's keys, cell phone, and wallet. Melville or his father also searched L.N., taking keys, $200 cash, and a cell phone, which Melville's father crushed with his foot. Melville's father took D.C. upstairs briefly, then returned and laid D.C. on the ground in the living room. After warning the victims to stay where they were and not to call the police, Melville and his father left the apartment.

¶4 Around the same time, R.C. was walking from a different apartment toward his car, parked one space away from the Melvilles' vehicle. Melville's father followed R.C. to his car and, when R.C. unlocked the car, grabbed the car door and got in. Melville's father searched through R.C.'s briefcase bag, then got out of the car and pulled a gun on R.C. R.C. turned to see Melville's uncle, in the driver's seat of the Melvilles' vehicle, pointing another gun through the window. Melville

2

said "he's not the one" or "I don't think he is one of them," and Melville's father moved to the Melvilles' car, and they drove away.

¶5        When J.R., L.N., and D.C. removed the zip-ties, they left the apartment and found R.C. on the phone with 911, and the police arrived within minutes. Melville, his father, and his uncle were later arrested and each charged with first-degree burglary, three counts of kidnapping, three counts of armed robbery, and four counts of aggravated assault.

¶6        Before trial, the State alleged that in 2005 Melville had committed and been convicted of a felony in New York—"Criminal Possession of a Loaded Firearm, 3rd Degree," N.Y. Penal Law § 265.02(4) (McKinney 2005)—and requested a ruling under Arizona Rule of Evidence 609 allowing the State to impeach Melville with this prior conviction were he to testify at trial. Melville moved to preclude impeachment with the New York conviction. Melville conceded that he had committed the offense, but he argued it should not be used for impeachment because the underlying conduct (possession of a loaded firearm) would not be a crime in Arizona, the relevant portion of the New York criminal statute had since been repealed, the underlying conduct was unrelated to truthfulness, the prior conviction was relatively old, and he had no subsequent convictions.

¶7        Melville testified at trial and contradicted the victims' version of events. He testified that he and his father had gone to the apartment that day to buy 10 pounds of marijuana from D.C. for $12,000. Melville understood L.N. to be D.C.'s "connect." When Melville discovered the marijuana was neither the quality nor the quantity agreed upon, D.C. reached for a gun in his waistband. Melville claimed that he then tussled with D.C. and took D.C.'s handgun; Melville's father stopped L.N. from reaching into his pocket and took L.N.'s pistol; J.R. was unable to reach another handgun in the kitchen. Melville asserted that his father briefly took D.C. upstairs to make sure no one else was in the apartment. Melville used zip-ties he found in the kitchen to bind the victims' hands and took keys from a bookstand to keep from being followed as he and his father left the apartment. On their way to their car, Melville saw R.C. pause suspiciously in the parking lot, and Melville's father then searched R.C.'s car for a firearm, but never drew a gun.

¶8        After Melville's testimony on direct, the superior court addressed the State's request to impeach Melville with the New York conviction. Melville's counsel did not dispute the existence of the prior conviction, but again reiterated his argument that allowing impeachment

with the New York conviction would be unfairly prejudicial, particularly in light of the fact that although a crime in New York, the underlying conduct would not be a crime under Arizona law. The court found that the probative value of the conviction (which the court ordered sanitized) outweighed its prejudicial effect and allowed the State to impeach Melville with the fact of the New York conviction.

¶9            On cross-examination, during a series of questions challenging Melville's credibility, the State asked Melville a single question about the New York conviction:

> Q.     Do you have a prior conviction?
>
> A.     Correct.

After the court instructed the jury that it could consider evidence of Melville's prior conviction "only as it may [a]ffect a defendant's believability as a witness" and not as evidence of guilt of the charged offense, the State referred to the prior conviction once in closing, stating:

> In terms of credibility, the jury instructions tell you, you listened to Paul Melville, Jr. testify? It's completely acceptable to take his prior conviction and you weigh that in the balancing test of credibility.

¶10          The jury found Melville guilty of two counts of armed robbery and four counts of aggravated assault,[1] and the superior court sentenced him to prison terms totaling 18 years. Melville timely appealed, and we have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(1), 13-4031, and -4033.[2]

---

[1]     At the close of evidence, the court directed a defense verdict on one count of armed robbery (as to D.C.). The jury found Melville not guilty of first degree burglary and could not reach a verdict on the three kidnapping charges. The court granted the State's motion to dismiss the kidnapping charges at the time of sentencing.

[2]     Absent material revisions after the relevant date, we cite a statute's current version.

**DISCUSSION**

¶11        Under Arizona Rule of Evidence 609(a)(1)(B), evidence of a prior conviction punishable by more than one year's imprisonment is relevant to the witness's character for truthfulness and "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant." Such a felony-grade conviction is material to credibility because "[t]he perpetrator of a major criminal act has demonstrated such a lack of scruples as to show a willingness to give false testimony." *State v. Williams*, 144 Ariz. 433, 438, 698 P.2d 678, 683 (1985) (citation omitted). In weighing probative value against prejudicial effect, the superior court is guided by several non-exclusive factors: the nature of the prior conviction (including any similarity between the prior and the charged offense), the impeachment value of the prior, the age of the prior, the witness's conduct since the prior, the importance of the witness's testimony, and the importance of the credibility issue. *Id.*; *State v. Noble*, 126 Ariz. 41, 43, 612 P.2d 497, 499 (1980).

¶12        Melville acknowledges the existence of the New York conviction, but argues that the superior court erred because the prior's minimal probative value was outweighed by its prejudicial effect. In allowing the State to impeach Melville with the fact of the New York conviction, the court expressly found that the probative value of the prior, as sanitized, outweighed any prejudicial effect. We review the court's determination for a clear abuse of discretion. *State v. Green*, 200 Ariz. 496, 498, ¶ 7, 29 P.3d 271, 273 (2001); *Williams*, 144 Ariz. at 439, 698 P.2d at 684.

¶13        Melville suggests that the age of the conviction weighs against admissibility. Melville was convicted of the New York offense over seven years before committing the instant offense. Although older convictions "have increasingly less probative value on credibility," *Green*, 200 Ariz. at 498, ¶ 9, 29 P.3d at 273 (citation omitted), seven years' age alone does not entirely wipe out the prior's relevance to Melville's general credibility and veracity. Nor is the New York conviction remote enough to trigger the more stringent standard for admissibility under Rule 609(b), which allows use of a conviction more than 10 years old only if "its probative value . . . *substantially* outweighs its prejudicial effect." (Emphasis added.)

¶14        Melville also argues that the nature of the prior offense does not support admissibility. First, he asserts that the New York conviction should not have been admitted because the type of crime—possession of a

loaded firearm—does not itself implicate veracity. But conviction of a felony-grade offense (whether or not a crime of falsehood) is in and of itself material to credibility because "a major crime entails such an injury to and disregard of the rights of other persons that it can reasonably be expected the witness will be untruthful if it is to his advantage." *Green*, 200 Ariz. at 498, ¶ 8, 29 P.3d at 273 (citation omitted). *Compare* Ariz. R. Evid. 609(a)(1) (allowing impeachment with conviction of a felony-grade offense, whether or not a crime of falsehood), *with* Ariz. R. Evid. 609(a)(2) (allowing impeachment with conviction of a crime of falsehood, whether or not a felony-grade offense).

¶**15**        Second, Melville argues the New York conviction should not have been admitted because the conduct underlying the conviction is not illegal in Arizona and because New York itself repealed the relevant criminal provision one year after the conviction. Melville was convicted of criminal possession of a weapon in the third degree for possessing a loaded firearm. *See* N.Y. Penal Laws § 265.02(4) (McKinney 2005). Whether Arizona law would criminalize the same conduct (possession of a loaded gun without additional misconduct, *cf.*, A.R.S. § 13-3102(A)) is not germane to the Rule 609 analysis. Instead, it is the fact that Melville disregarded the law of the convicting jurisdiction that reflects on his character and shows the "lack of scruples" relevant to his credibility. *See Williams*, 144 Ariz. at 438, 698 P.2d at 683. Additionally, although the New York legislature repealed possession of a loaded firearm as a manner of committing criminal possession of a weapon in the *third* degree, it concurrently added possession of a loaded firearm to the offense of criminal possession of a weapon in the *second* degree, which carries an even greater possible sentence. 2006 N.Y. Laws ch. 742; N.Y. Penal Law § 265.03(3); *see also* N.Y. Penal Law § 70.00(2)(c), (d).

¶**16**        Melville argues that use of the New York conviction was overly prejudicial because "the prosecutor used that fact to attack his credibility in cross-examination and then argued that the jury should consider that in deciding which version of events to believe." The State mentioned "a prior conviction" in only one question on cross-examination, and mentioned it only once (in the context of a broader discussion of factors weighing on credibility) during closing. This minimal use, expressly for a proper purpose, does not establish such excessive prejudice to override the New York conviction's probative value.

¶**17**        Given the conflicts between the victims' testimony and that of Melville, witness credibility took on central importance at trial. *See*

*Williams*, 144 Ariz. at 438, 698 P.2d at 683; *Noble*, 126 Ariz. at 43, 612 P.2d at 499. The superior court appropriately determined that the probative value of the New York conviction outweighed its prejudicial effect. Additionally, the court allowed impeachment only with a sanitized version of the prior—the fact of conviction but not the nature of the offense—which avoided any potential prejudice from similarity between the prior and instant offenses (insofar as both involved a firearm). *See State v. Beasley*, 205 Ariz. 334, 338–40, ¶¶ 19–26, 70 P.3d 463, 467–69 (App. 2003) (discussing the value of sanitizing a prior conviction for use impeaching a witness's credibility to avoid unfair prejudice arising from discussion of the nature of the prior offense). Accordingly, the superior court did not err by allowing the State to impeach Melville with his prior conviction.

**CONCLUSION**

¶18 For the foregoing reasons, we affirm Melville's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh