NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ANDREW FRANK PADILLA, *Appellant.*

No. 1 CA-CR 16-0503
FILED 12-28-2017

Appeal from the Superior Court in Maricopa County
No.  CR2015-121231-001
The Honorable James R. Rummage, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Ballecer & Segal, LLP, Phoenix
By Natalee E. Segal
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Paul J. McMurdie and Judge Thomas C. Kleinschmidt[1] joined.

---

**S W A N N**, Judge:

**¶1** Andrew Frank Padilla appeals his conviction for robbery. He contends that the superior court erred by admitting evidence of an out-of-court one-on-one identification. We hold that the identification procedure, even if inherently suggestive, was properly admitted. We therefore affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2** Padilla was indicted for robbery. Before trial, Padilla filed a *Dessureault* motion to exclude identification of Padilla as the person who committed robbery against him.[2] Counsel who filed the motion withdrew from the case. The motion was then withdrawn at a hearing and Padilla's new attorney did not refile it.

**¶3** At trial, the state presented evidence of the following facts. In the early morning hours of May 9, 2015, D.G. was walking home after a night out with friends, where he had "two or three beers." D.G. testified to having a "slight buzz," but also being "pretty conscious still."

**¶4** Upon nearly reaching his destination, D.G. was approached by Padilla on a bicycle. D.G. testified that Padilla followed him for a period of time and then suddenly punched him. Padilla punched D.G. four to five times in the eye, the nose, and the lip. Padilla then grabbed D.G.'s iPhone and bag. The bag contained D.G.'s phone charger and other "nick knack possessions." D.G. ran to a nearby house, after which the police were called.

**¶5** Officers Ullman, McCarley, and Keller were dispatched to D.G.'s location. In his statement to the officers, D.G. mentioned his

---

[1] The Honorable Thomas C. Kleinschmidt, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2] *See State v. Dessureault*, 104 Ariz. 380, 383–84 (1969).

assailant was on a bicycle without a bike light. D.G. described his assailant as someone wearing a hat and a dark sweater or jacket.

¶6          Officer Keller verified that D.G. had the "Find My iPhone" application on his iPhone. The officer accessed the application to locate the stolen iPhone, but it was offline. Officer Ullman then transported D.G. to a location of his request. Officer Keller checked the application again and saw the iPhone was online and indicating a specific location. Both Officers Ullman and Keller drove to the location identified in the application and found a bicycle in the front yard. Consistent with D.G.'s description, the bicycle did not have a bike light.

¶7          As officers approached the home, they noticed a carport with a door and silhouettes moving around inside. Padilla exited the home, wearing a leather jacket and a hat. Officer Keller testified that the jacket had fresh blood on it and Padilla's hands were "very, very flush." He also testified that Padilla claimed ownership of the bicycle. Officers collected Padilla's jacket as evidence and preserved the blood for testing.

¶8          After searching the home, police found D.G.'s property, including his iPhone. Padilla was taken into custody. In addition, officers performed a search incident to arrest, finding a lighter, tweezers, a key chain, and a wallet belonging to D.G. Within two hours of the crime, Officer Ullman contacted D.G. and advised him someone was detained who "may or may not be the person that had committed the crime against him." D.G. was directed that if he recognized the suspect as the one who committed the crime, he would need to tell officers from when and where he knew him.

¶9          Thereafter, Officer Ullman parked in front of the house where Padilla was located and turned his spotlight on. Padilla was placed approximately 20 feet in front of the vehicle. The area where Padilla was standing was well lit. Officer Ullman testified that D.G. looked at Padilla and said, "that's definitely him." During the identification, D.G. reported to officers that Padilla was not wearing the jacket and the hat that he had on at the time of the assault.

¶10          At trial, D.G. could not identify Padilla in court, but testified about his changes in appearance such as longer hair and glasses. Officers Ullman and Keller independently identified Padilla, and Officer Ullman confirmed that he looked different than he had during the initial identification at the time of the crime. Another witness, a forensic scientist with the City of Phoenix Police Department Crime Laboratory, testified that

the blood on Padilla's jacket contained DNA that matched the sample D.G. gave to police.

¶11        Padilla moved for a directed verdict under Ariz. R. Crim. P. 20. The court denied the motion. The jury convicted Padilla of robbery and the court sentenced him to the presumptive term of 10 years' imprisonment. Padilla timely appeals.

## DISCUSSION

¶12        Padilla's sole contention on appeal is that the superior court erred by admitting evidence of the out-of-court one-on-one identification. He did not object to the evidence at trial, and a defendant's failure to raise an objection to identification at trial forfeits the right to seek relief for all but fundamental, prejudicial error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005).

¶13        To obtain relief under fundamental error review, the defendant has the burden to show that error occurred, the error was fundamental, and it prejudiced him. *Id.* at 567–68, ¶¶ 20–22. Fundamental error is error going to the foundation of the case, taking a right essential to his defense, and that is of such magnitude that the defendant is deprived of a fair trial. *Id.* at 567, ¶ 20. We will not presume prejudice where none appears affirmatively in the record. *See State v. Trostle*, 191 Ariz. 4, 11 (1997); *State v. Munninger*, 213 Ariz. 393, 397, ¶ 14 (App. 2006).

¶14        Our supreme court has held that one-man-show-up identifications are inherently suggestive. *State v. Williams*, 144 Ariz. 433, 439 (1985). However, a defendant's due process rights are not violated by the admission of testimony regarding suggestive and unnecessary identification, so long as the evidence "possesses sufficient aspects of reliability." *Id.*; *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977). A reliable one-man-show-up identification may be admissible at trial because it enables the police to either identify the potential culprit due to the witness's fresh mental picture of him or her, or release an innocent person and continue the search before the culprit escapes detection. *State v. Gastelo*, 111 Ariz. 459, 461 (1975).

¶15        An unduly suggestive identification will be screened for reliability under the factors articulated by the Supreme Court in *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972). The following factors are considered:

> (1) the amount of time elapsed between the observation and the identification; (2) the accuracy of the description given by

the witness before the show up; (3) the degree of the witness'
certainty as to the accuracy of the identification; (4) the
witness' opportunity to view the culprit at the time of the
crime; and (5) the witness' degree of attention at the time of
the crime.

*State v. McLoughlin*, 133 Ariz. 458, 462 (1982). Further, Arizona courts have
consistently held that a one-man-show-up is not improper if it is conducted
near the time of the crime or at the scene of the crime. *Gastelo*, 111 Ariz. at
461; *see State v. Dixon*, 153 Ariz. 151, 155 (1987) (identification valid even if
a "few hours" passed beforehand); *see State v. McCall*, 139 Ariz. 147, 155
(1983) (the passing of 14 days before identification is not "so late as to be *per
se* unreliable").

**¶16**        We do not attribute any error, much less fundamental error,
to the admission of the one-on-one identification procedure in this case.
Officer Ullman proceeded with his decision to perform a one-on-one
identification after verifying that he was within the two-hour time frame
generally accepted by enforcement officers and courts. Before the
identification, D.G. described his assailant as someone wearing a black
jacket and hat and riding on a bicycle without a light. Upon performing the
one-on-one identification, which was done in ample lighting, D.G.
identified Padilla with complete certainty, clearly stating "that's definitely
him." During the identification, D.G. mentioned that Padilla was not
wearing the jacket and the hat he had initially observed. D.G. testified that
he was "conscious" at the time of the crime, allowing him to view Padilla
and to do so with a high degree of attention.

**¶17**        Moreover, while not dispositive of the admissibility of the
identification, the state presented evidence that D.G.'s iPhone was found
using its transmitted location, which pinpointed the iPhone to the house
where Padilla was found. And officers found other property belonging to
D.G. on Padilla's person. In these circumstances, any hypothetical error
associated with the admission of the on-scene identification was not
prejudicial to Padilla.

## CONCLUSION

¶18        For the foregoing reasons, we affirm Padilla's conviction and sentence.

