453 P.2d 951

The STATE of Arizona, Appellee,

v.

Robert Gary DESSUREAULT, Appellant.

No. 1899.

Supreme Court of Arizona.

In Banc.

April 30, 1969.

Rehearing Denied June 4, 1969.

See 454 P.2d 981.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Darrell F. Smith, Former Atty. Gen., Phoenix, for appellee.

Vernon B. Croaff, Public Defender, by Grant Laney, Deputy Public Defender, Phoenix, for appellant.

STRUCKMEYER, Justice.

Robert Gary Dessureault was charged under A.R.S. § 13–641 with the robbery

of a Circle K Market in the City of Phoenix, Arizona. He was tried, found guilty and sentenced to a term of years in the State Penitentiary. From the judgment of conviction and sentence he appeals.

At about 1:00 a. m. on the 20th day of June, 1967, Ronald E. Wilkins, an employee of a Circle K Market in the City of Phoenix, Arizona, was working in the store alone when a man, later identified as Dessureault, entered and after threatening Wilkins with a hand gun took the contents of the cash register. Early the next morning an informant telephoned the police and gave them information which led to Dessureault's arrest. The police arrested Dessureault at his residence and after a search of his automobile and room, found a loaded gun and money in the exact amount taken from the store. At about the hour of 10:00 a. m., a lineup was held in which Dessureault was present with three others. Wilkins identified Dessureault as the robber. Dessureault did not have an attorney present at the lineup nor does it appear that he intelligently and voluntarily waived any constitutional rights which he might have had thereto.

At the trial Wilkins identified Dessureault as the robber. The defendant here challenges the identification in all of its ramifications pointing to the three cases decided by the Supreme Court of the United States on June 12, 1967, of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178; and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. See also Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, and Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (U.S. Supreme Court, April 2nd, 1969).

Both Wade and Gilbert involved lineup identifications. Both identifications were made at some considerable time after the offense and after indictments had been returned and counsel had either been retained or appointed to assist in the defense. In Wade the court held "there can be little doubt that for Wade the post-indictment lineup was a critical stage of the prosecution" at which he was entitled to the aid of counsel. The court reasoned that a lineup is often used to crystalize a witness' identification and "Privacy results in secrecy and this in turn results in a gap in our knowledge as to what in fact goes on."

■■ In Arizona an indigent accused is entitled as a matter of right to appointive counsel upon arraignment in the superior court. His rights under the Sixth Amendment to the Constitution of the United States are materially lessened when contrasted with that of a defendant who is able to retain private counsel from the moment he becomes a suspect. Constitutional rights ought not rest upon the financial ability of an accused to employ counsel to preserve those rights. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891. We are not, however, prepared at this time to extend the application of Wade and Gilbert to pre-indictment or pre-information situations, rather, we think, controlling is the application of the Fourteenth Amendment to the Constitution of the United States in Stovall. There, the court, itself, found from the totality of the circumstances surrounding the identification that Stovall had been extended due process of law in a constitutionally fair trial.

In the instant case the prosecution did not purport to rely on the lineup identification, rather skipped lightly through an in-court identification in this fashion:

"Q * * * Now, before we go any further, is that person in the courtroom today?

"A Yes.

"Q Would you point him out to the court?

"A There, the defendant over there."

On cross-examination, the prior lineup was developed and counsel compelled the production of this picture of the lineup. Dessureault's position is number one.

The person perpetrating the offense at 1:00 a. m. on the morning of June 20th, 1967, was described as having a moustache and a beard. Dessureault when placed in a lineup with three others was the only person who had a moustache and a beard. Palpably, the lineup itself had no virtue as a test of Wilkins' ability to discriminate. It was afflicted with all the possibilities for mistaken identification and the attendant evils at which the Supreme Court in its recent decisions has been striking.

We, of course, recognize that a lineup does not require individuals of absolute identical dress, size and physical characteristics. If it were possible to establish such a lineup, clearly, identification would be impossible. It is the differences which distinguish one individual from another and by which identifications are made, but where the differences are so great that only one person could, within reason, fill the description of the accused, leaving the witness with only one possible choice, the lineup itself becomes significantly suggestive and as such materially increases the dangers inherent in eye witness identification.

While we are of the view that the holdings in Wade and Gilbert have no application because this was not a post indictment situation and there was neither retained nor appointed counsel, as a pretrial identification, it is within the ambit of the decision in Stovall. Consistent with the procedures used in Stovall, we examine the totality of the circumstances to determine whether there has been a denial of a fair trial because of a want of due process of law, and in the light of our examination of the Supreme Court's decisions cited supra, apply these principles on review as compatible not only with this but with all pretrial identifications.

*First*, where, as here the in-court identification is challenged at the trial

level, meaningful review requires that the appellate court reach one of the following conclusions: if it can be determined from the record on clear and convincing evidence that the in-court identification was not tainted by the prior identification procedures or from evidence beyond a reasonable doubt that it was harmless, and there is otherwise no error, the conviction will be affirmed. If it can be determined from the record that the in-court identification was tainted and that it does not appear harmless beyond a reasonable doubt, the conviction will be reversed. If the record does not permit an informed judgment that the in-court identification had an independent source [was not tainted] and was not harmless beyond a reasonable doubt, the cause will be remanded to the lower court for a hearing at which findings of fact must be made and the record then be transmitted to the appellate court for its independent scrutiny, where a decision will be made giving the customary weight to the trial court's findings.

■ *Second,* if the in-court identification is not challenged at the trial level, it will be presumed thereafter that prior identification procedures did not taint the in-court identification. This presumption we deem conclusive for the obvious reason that all litigation, even criminal, must end at some point. Matters which could have been determined by the mere asking, if not raised, will be deemed settled adversely to the accused.

Similarly, effective procedures at the trial court level are:

■ *First,* if at the trial the proposed in-court identification is challenged, the trial judge must immediately hold a hearing in the absence of the jury to determine from clear and convincing evidence whether it contained unduly suggestive circumstances. In this the burden is on the prosecution to establish from all the circumstances surrounding the pretrial identification that it was not such as to be unduly suggestive.

■ *Second,* if the trial judge concludes that the circumstances of the pretrial identification were unduly suggestive or that the prosecution has failed to establish by clear and convincing evidence that they were not, then it is the prosecution's burden to satisfy the trial judge from clear and convincing evidence that the proposed in-court identification is not tainted by the prior identification.

■ *Third,* if requested, the court must instruct the jury that before returning a verdict of guilty it must be satisfied beyond a reasonable doubt that the in-court identification was independent of the previous pretrial identification or if not derived from an independent source, it must find from other evidence in the case that the defendant is the guilty person beyond a reasonable doubt.

■ Here, the record supports the conclusion that although the pretrial identification was unduly suggestive, the in-court identification had an independent source other than the lineup. True, the complaining witness, Wilkins, acknowledged on cross-examination that the lineup identification helped in making the in-court identification. He testified:

"Q Now, did he—in your opinion did the period that you observed this person in the line-up, would that in anyway, does that in anyway help you here today make the identification that you are making?

"A It does, yes.

"Q Each time, it is only common sense —each time you see a person, especially a stranger, you are a little bit more able to tell who he is, isn't that true?

"A Yes, sir."

But from this we do not think it necessarily follows that the in-court identification was tainted. This reinforcement of the witness' original identification, honestly admitted, is inherent in every case and we know of no means by which it can be avoided. Unless virtually all eye witness testimony on identification is to be

outlawed, the ultimate determination must be whether the in-court identification is or can be made independent of other pre-trial identification procedures. In this, we think that the evidence was clear and convincing that Wilkins' final identification at the trial was from his initial contact with Dessureault at the time of the holdup.

After Dessureault entered the store, Wilkins turned around and saw Dessureault pointing a gun. At that time Dessureault demanded the money from the cash register. Wilkins obtained the money, put it in a paper sack and handed it to defendant. From the time Dessureault produced the gun and the money was given to him, Wilkins estimated approximately three minutes passed. Wilkins did not observe the color of Dessureault's eyes or the quality of his voice nor did he pay attention as to how Dessureault was dressed. At the lineup he directed his attention only to Dessureault's face, testifying:

"I didn't pay any attention to anything else outside of his face. I recognized him."

This testimony was elicited on cross-examination:

"Q Now, let me ask, Mr. Wilkins, the first time you saw the defendant in the market, the person you claim was the defendant, you only had a very brief opportunity to observe him there, didn't you?

"A I don't know what you mean by brief but I was standing facing him like that and I surely could identify him by looking at him there standing, looking right at him."

On re-direct examination Wilkins was asked these questions and gave these answers:

"Q And is there any question in your mind that this is the same person that allegedly held you up on June 20, 1967?

*    *    *    *    *    *

"A None whatsoever.

*    *    *    *    *    *

"A Now, how do you identify this defendant as the same person who robbed you on June 20, 1967?

"A By his face."

We are of the opinion that while the lineup was unduly suggestive, it was no more suggestive than an individual show up or a "face to face" confrontation. The identification was positive and unequivocally made from the defendant's face. As can be seen from the photograph of the lineup, Dessureault's face is not lacking in distinctive character and is not such as would readily be confused. We, therefore, hold that the in-court identification was by clear and convincing evidence not "come at by exploitation of that illegality", and while the pretrial identification was unduly suggestive, it was not conducive to irreparable mistaken identification.

Appellant urges that the court committed error during its voir dire examination of the prospective jurors when the judge seemingly on his own volition inquired of the jurors:

" *    *    * Is there anyone who would feel that by not taking the stand the defendant has something to hide? Is there anyone who feels that would be the case? I take it by your silence that none of you feels that way."

This State has long been committed to the rule that it is prejudicial error for the court to comment on the failure of the defendant to take the witness stand. State v. Acosta, 101 Ariz. 127, 416 P.2d 560; State v. Jordan, 80 Ariz. 193, 294 P.2d 677. The Court of Appeals has twice held, and we think correctly, that it is error to instruct on the right of the defendant not to testify in the absence of a request. State v. Zaragosa, 6 Ariz.App. 80, 430 P.2d 426; State v. Cousins, 4 Ariz.App. 318, 420 P.2d 185.

The voir dire examination pointedly directed the attention of the jurors at the inception of the trial to be alert to the fact that the defendant might not take the

stand to contradict the State's evidence on matters within the range of the defendant's knowledge. Even worse, it suggested that if the defendant did not take the witness stand, it was because defendant had something to hide. The court's examination was palpably erroneous. However, any prejudice which might have resulted was cured by the defendant taking the witness stand. The contingency to which the court alluded (that if the defendant did not take the witness stand he had something to hide) did not occur and hence there is no reason to believe that the voir dire examination influenced the jury in its deliberations.

Dessureault also asserts that his arrest and the subsequent search and seizure were illegal because the information which led to the arrest was furnished by an informant who was not shown to be reliable. We reject defendant's position.

The police had previously received a report of the robbery from the victim when at 8:30 a. m. an anonymous call was received reporting that the robber could be found at a certain address and giving the name and location of a witness. The police immediately interviewed the witness who stated that she was sitting in the defendant's car parked around the corner when the robbery occurred. She furnished the police with the address of the house where Dessureault was staying. She also informed the police that Dessureault planned on leaving the State.

■■■ We have previously held in State v. Pederson, 102 Ariz. 60, 424 P.2d 810:

"* * * The existence of probable cause is determined by application of an objective rather than a subjective standard. Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142. Probable cause exists ' * * * where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.' Ker v. State of California, 374 U.S. [23] 35, 83 S.Ct. [1623] 1630, 10 L.Ed.2d 726."

And see State v. Vaughn, 104 Ariz. 240, 450 P.2d 698, and State v. Williams, 104 Ariz. 319, 452 P.2d 112 (Mar. 1969).

■■■ The police did not rely solely on information furnished by an unknown informer. There was a police record of the robbery, and information from a woman companion of the defendant. Acting on information supplied by the witness, not the informer, the police arrested Dessureault. The United States Supreme Court in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407 at 413, 9 L.Ed.2d 441, said:

"* * * It is basic that an arrest with or without a warrant must stand upon firmer ground than mere suspicion, see Henry v. United States, 361 U.S. 98, 101, 80 S.Ct. 168, 170, 4 L.Ed.2d 134, though the arresting officer need not have in hand evidence which would suffice to convict. The quantum of information which constitutes probable cause—evidence which would 'warrant a man of reasonable caution in the belief' that a felony has been committed, Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543—must be measured by the facts of the particular case."

We hold that the police acted on probable cause and that the arrest was legal.

■■■ We also hold that the trial court did not improperly admit evidence of the result of a search of the defendant's vehicle made shortly after his arrest. The State introduced evidence from the arresting officers at a lengthy hearing at which the jury was excluded that Dessureault was asked if the officers could search his vehicle to which he replied: "Go ahead." Later, when the pistol and money found in the defendant's vehicle were offered into evidence an objection was made in this language: " * * * these exhibits are the fruits of an illegal search and following an unlawful arrest." The court ruled that

the arrest was lawful and "that the defendant consented to the officers taking the key and searching the car. In other words, he did it voluntarily." We think the evidence of the arresting officers is sufficient to support the trial court's finding.

■ Dessureault complains that the court erred in refusing his requested Instructions # 3 and # 8. The substance of his requested Instruction # 3 is that the jurors must be satisfied beyond a reasonable doubt as to the accuracy of Wilkins' identification. In essence, this instruction was covered by the court's instructions on identification.

■ Dessureault's requested Instruction # 8 in part told the jury to disregard the lineup identification and in part to disregard the in-court identification if the lineup identification contributed to Wilkins' capacity to make the in-court identification. The requested instruction is faulty in that it is inconsistent within itself. But irrespective, the lineup identification was brought out on cross-examination. We know of no rule which permits a defendant to bring out testimony on cross-examination which allows him to have such testimony withdrawn from the jury's consideration because, upon reflection it does not now appear to be to his advantage. The latter portion of the requested instruction was more than appropriately covered by the court's instruction to the jury, that it must be satisfied beyond a reasonable doubt of the identification of the defendant by Wilkins, independent of that drived from the lineup.

■ Appellant's final grounds for reversible error are the denial of his motion for a new trial and the refusal of the court to grant his motion for a directed verdict. We have frequently ruled that the trial court is not required to direct a verdict when there is substantial evidence that the defendant committed the offense as charged. State v. Acosta, supra; State v. Williams, supra. For the same reason the denial of the motion for a new trial was proper.

Judgment of the trial court affirmed.

UDALL, C. J., LOCKWOOD, V. C. J., and McFARLAND and HAYS, JJ., concur.