OPINION
GREER, Judge.
In this matter we determine whether the defendant’s trial counsel’s failure to adequately prepare an insanity defense and request a Dessureault hearing amounts to ineffective assistance of counsel. For the following reasons, we determine it does and therefore reverse and remand this case for a new trial.
On October 21, 1980, defendant Edwards was indicted by the Maricopa County Grand Jury on charges of theft by extortion, a class four felony, and aggravated assault with a dangerous weapon, a class three felony. An allegation of dangerousness was subsequently alleged by the county attorney. Defendant’s appointed trial counsel presented two main defenses at trial: 1) not guilty by reason of insanity; and, 2) mistaken identification. Following trial, the jury returned guilty verdicts on both charges. Defendant thereafter retained new counsel, who filed a motion for new trial based upon, inter alia, a claim of ineffective assistance of counsel. The court denied defendant’s motion and sentenced him to concurrent aggravated sentences of four and one-half years and nine years. Defendant thereafter retained present counsel, who unsuccessfully sought postconviction relief.[1]
The record reflects the following relevant facts. The victim in this matter, an alleged homosexual, testified that he was entertaining a male friend at his apartment on the evening in question. His friend allegedly arranged to have marijuana delivered to the victim’s apartment that evening. The defendant and his accomplice arrived some time later and were allowed into the apartment by the victim’s friend. The defendant allegedly produced a gun and aimed it at the victim and demanded money. After learning the victim had no money, the defendant ordered him to disrobe and assume compromising homosexual positions with the victim’s friend and the defendant’s accomplice. Pictures were apparently taken of the victim’s actions and later used in an attempt to extort money from him. The victim did not contact police until approximately ten days later. He subsequently identified the defendant in a photographic lineup.
The main thrust of defendant’s allegations of ineffective assistance of counsel are twofold: 1) defendant’s trial counsel *219 did not adequately prepare and present an insanity defense; and, 2) defendant’s counsel failed to request a Dessureault hearing.
Defendant’s appellate counsel has alleged that defendant’s long history of mental illness was a defense counsel’s dream upon which to base an insanity defense. The appellate record[2] shows that defendant has an extensive history of mental problems, dating back to 1968. Defendant’s psychiatric trial expert, Dr. William Haeussler, testified that he originally diagnosed the defendant as a paranoid schizophrenic in 1968, while the defendant was a patient at Good Samaritan Hospital. Dr. Haeussler further testified that he saw the defendant on a continual basis from 1968, including twelve to fifteen times the defendant was hospitalized for mental problems. Dr. Haeussler also testified the defendant had an increasing problem with mood disturbances, including manic depression, which led to frequent suicide attempts. The record further shows the defendant tended to disassociate himself from reality by slipping into altered states, an affliction apparently referred to as a psychologic fugue state. These psychologic fugue states included times when the defendant was totally amnesic. An extreme example of the defendant’s altered states is that he allegedly woke up one time in Europe and had no idea of how he got there.
At the hearing on the motion for new trial, defendant’s trial counsel testified that he spent approximately five hours preparing the insanity defense. Two attorneys, both certified criminal law specialists, testified on the defendant’s behalf at the hearing. Mr. Jordan Green testified that in his opinion the defendant received ineffective assistance of counsel because the defendant’s attorney:
1. Presented two separate and totally conflicting defenses to the jury;
2. Did not support the insanity defense with medical records; and,
3. Failed to consult another psychiatrist after Dr. Haeussler equivocated on the
Mr. Craig Mehrens testified he believed the defendant received ineffective representation because:
1. He did not personally interview Dr. Haeussler until the day of trial. He found this to be particularly damaging because Dr. Haeussler was not a forensic psychiatrist, and had problems understanding the M’Naghten rule;
2. He failed to consult another psychiatrist after Dr. Haeussler equivocated on the defendant’s insanity at the time of the offense;
3. He never interviewed the victim;
4. He never obtained medical records from other physicians who had treated the defendant in the past;
5. He did not interview the defendant’s mother or other lay witnesses until the day of trial;
6. He did not request a Dessureault hearing; and,
7. He did not decide to raise the mistaken identification issue until he saw how things were progressing at trial.
The new test for effective assistance of counsel, which is applicable to the instant case under State v. Nunez, 135 Ariz. 257, 660 P.2d 858 (1983), was elucidated by our supreme court in State v. Watson, 134 Ariz. 1, 4, 653 P.2d 351, 354 (1982): “whether under the circumstances the attorney showed at least minimal competence in representing the criminal defendant.” A defendant is entitled to an attorney whose performance meets minimum professional standard. Id,., citing United States ex rel. Williams v. Twomey, 510 F.2d 634, 640 (7th Cir.1975), cert. denied, Sielaff v. Williams, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975). The focus of inquiry is upon trial counsel’s performance rather than the effect of that performance on the outcome of the proceedings. Thus, the defendant bears the burden of proving, by a preponderance of the evidence, that his counsel’s representation was not minimally *220 competent. State v. Watson. Once that is done, the burden shifts to the state to prove beyond a reasonable doubt that any error was harmless.
We recognize at the outset that disagreements concerning trial strategy or errors in trial tactics do not support an ineffectiveness claim. Id. We also recognize that a criminal defendant is not necessarily entitled to the best defense available, only one that is minimally competent. In this case, the trial judge denied defendant’s motion for a new trial under our old farce, sham or mockery test, but nevertheless commented that he felt the defendant received “inadequate” representation. In similarly concluding that the defendant’s trial counsel’s representation was wholly inadequate and ineffective under Watson, we find the following to be particularly relevant to our decision.
The defense of not guilty by reason of insanity has always been controversial. Recently, however, it has been met with increasing criticism.[3] Increased publicity, perhaps motivated by the March 30, 1981 assassination attempt of President Reagan, has made the general public more aware than ever of this controversial defense. Legislatures in many states, including our own, have considered abolishing or reforming the defense. As a result, juries are increasingly hesitant to accept the defense of not guilty by reason of insanity. Thus, in order to prevail with this defense, criminal trial counsel must prepare more diligently than ever for presentation of this-defense to the jury.
We find it difficult to set forth any specific criteria by which to judge an attorney’s presentation of the insanity defense. However, the following factors are the ones we have determined to be most damaging to the defendant’s case in the instant action.
FAILURE TO INTERVIEW LAY WITNESSES
As defendant’s experts pointed out, the testimony of lay witnesses can be important when raising the insanity defense. In the instant case, defendant’s counsel failed to interview the defendant’s mother or friends until the day of trial. Although the defendant’s mother testified at trial, she did not relate any information regarding the defendant’s prior mental problems. That testimony might well have been helpful to the defense of not guilty by reason of insanity. However, because of the late hour at which the witnesses were interviewed, it would have been difficult if not impossible to adequately prepare them for trial. We can find no excuse to justify counsel’s failure to interview witnesses until the day of trial.
FAILURE TO PERSONALLY CONFER WITH DR. HAEUSSLER
The M’Naghten test for insanity is a legal, not medical test. State v. Preis, 89 Ariz. 336, 362 P.2d 660, cert. denied, 368 U.S. 934, 82 S.Ct. 372, 7 L.Ed.2d 196 (1961); State v. Howland, 134 Ariz. 541, 658 P.2d 194 (1982). Although a testifying psychiatrist need not be a forensic specialist, it is necessary that he be thoroughly familiar with the legal ramifications of the test.
Sometime prior to trial defendant’s counsel was notified that the deputy county attorney planned to interview Dr. Haeussler. However, he did not personally confer with Dr. Haeussler prior to that interview. This failure was particularly damaging in this case because Dr. Haeussler was unfamiliar with the M’Naghten test and had problems understanding it. He originally told the prosecutor that he believed the defendant was sane at the time of the alleged offense under the M’Naghten test. *221 Although the state advised counsel of this fact, he failed to contact Dr. Haeussler and discuss this matter with him. Although Dr. Haeussler subsequently changed his opinion, and so advised the deputy county attorney, the damage had already been done. Knowing this, defendant’s counsel still failed to personally confer with Dr. Haeussler until the day of trial.
At trial, Dr. Haeussler testified under cross-examination that he disliked the M’Naghten standard and had problems understanding it. The state challenged Dr. Haeussler’s testimony by having its own expert witness, a certified forensic psychiatrist, testify that a psychiatrist’s opinion regarding a defendant’s insanity was not very credible if that psychiatrist had problems understanding the insanity defense. We believe that the jury must have also questioned the value of Dr. Haeussler’s testimony in light of his acknowledged difficulties in understanding the M’Naghten test.
FAILURE TO REQUEST DESSU-REAULT HEARING
The defendant also alleges that his trial counsel was ineffective because he failed to request a Dessureault hearing. State v. Dessureault, 104 Ariz. 380, 453 P.2d 951 (1969). He bases this argument upon the fact that the victim’s description of his assailant, given approximately ten days after the alleged incident occurred, failed to accurately describe the defendant. The victim described the defendant as approximately twenty-seven years old, five-foot-ten inches and 170 pounds. In fact, the defendant was thirty-nine years old, five-foot-eight inches and 130 pounds. The defendant also points out that the victim failed to mention that his assailant wore glasses, although two separate witnesses testified that the defendant could hardly see without his glasses. Defendant finally points out that, although the victim immediately picked the defendant’s codefendant out of the photographic lineup, it took him over one minute to select the defendant’s picture. The defendant also attacks the lineup as being unduly suggestive because it depicts him without his glasses, which he alleges caused his eyes to appear to bulge in a manner which attracted attention to himself. At the hearing held on the motion for new trial, defendant’s counsel admitted that the above facts constituted a sufficient basis for a valid Dessureault hearing.
When the above facts are all taken together, including the fact that defense counsel spent only approximately six hours in total in preparing the defense, we feel a prima facie showing of ineffective assistance of counsel has been made. We believe the preceeding amounts to substantially more than trial tactics or strategy and constitutes a failure to present even a minimally competent defense.
The state's appellate brief was prepared at a time when the farce, sham or mockery was still the law in Arizona. As such, the state did not attempt to prove lack of prejudice in its brief. Nor were any supplemental briefs or authorities filed by the state. We are not persuaded beyond a reasonable doubt by the state’s oral argument that the defendant was not prejudiced by the less than minimally competent defense put on by the defendant’s trial counsel. For instance, we find it more probable that the defendant would have prevailed on the insanity defense if his attorney had presented testimony from a psychiatrist qualified to render an opinion under M’Naghten, and had presented testimony from lay witnesses. Moreover, because it is a factual determination, it is difficult for us to determine whether the victim’s in-court-identification of the defendant was sufficient to purge the taint of a possible suggestive photographic lineup. Thus, we cannot determine that the failure to request a Dessureault hearing was harmless beyond a reasonable doubt.
Accordingly, we must reverse the jury’s guilty verdict and judgment of the trial court and remand this matter for a new trial.
GRANT, J., concurs.

. The record does not support defendant’s allegation that he filed a petition for review of the post-conviction relief order. Thus, we are without jurisdiction to review the memoranda or transcript of the hearing held on the post-conviction relief petition.

. Again, excluding anything related to the motion or hearing for post-conviction relief. defendant’s legal insanity during the commission of the offense.

. See, e.g., Clanon, Less Insanity in the Courts, 68 A.B.A.J. 824 (1982); Pasewark, Insanity Revised: Once More over the Cuckoo’s Nest, 6 J. Psych. & L. 481 (1978); Robinson, Insanity Defense: Does it serve justice, 71 Ill.B.J. 306 (1983); Robitscher, In Defense of the Insanity Defense, 31 Emory L.J. 9 (1982); Spring, The End of Insanity, 19 Washburn L.J. 23 (1979); Slowinski, Criminal Responsibility: Changes in the insanity defense and the “guilty but mentally ill" response, 21 Washburn LJ. 515 (1982).