NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

KITAGE QETU LYNCH, *Appellant.*

No. 1 CA-CR 18-0451
FILED 12-3-2019

Appeal from the Superior Court in Maricopa County
No. CR2016-118719-001
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Ortega & Ortega, PLLC, Phoenix
By Alane M. Ortega
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Diane M. Johnsen joined.

---

**W I N T H R O P**, Judge:

**¶1**         Kitage Qetu Lynch ("Appellant") was convicted and sentenced by a jury of two counts of aggravated assault, two counts of discharge of a firearm at a structure, one count of disorderly conduct, and one count of unlawful discharge of a firearm within city limits.  This appeal is filed in accordance with *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297 (1969).  Appellant's counsel advised this court that she has searched the record and has found no arguable question of law that is either not frivolous or that has not already been resolved.  She requests this court conduct its own independent review of the record for fundamental error.  *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999) (stating that this court reviews the entire record for reversible error).  Appellant was provided the opportunity to file a supplemental brief *in propria persona*, but he has not done so.

**¶2**         We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and 13-4033(A).[1]  Finding no reversible error, we affirm.

## FACTS[2] AND PROCEDURAL HISTORY

**¶3**         Around 1:00 A.M. on April 20, 2016, S.Z. called 911 to report a man firing a gun sporadically in a dirt field at 95th Avenue and Camelback in Glendale.  S.Z. was with her husband, her brother, and her three young children in a fifth-wheel trailer parked in the same field, and she was worried the man might shoot one of her family members.  S.Z.

---

[1]     Absent material changes from the date of the alleged offenses, we cite to the current versions of all statutes and rules.

[2]     "We view the evidence in the light most favorable to sustaining the verdicts and resolve all inferences against appellant."  *See State v. Fontes*, 195 Ariz. 229, 230, ¶ 2 (App. 1998).

reported that the man was kicking and punching the air, yelling, and shooting the gun at random toward a new housing development.

¶4            Two Glendale Police Department patrol units—Sergeant E.H. and Officer J.M.—responded to the 911 call. As they approached the field, both units had their vehicle headlights, flashing red and blue lights, and white LED takedown lights on. E.H. also initiated the spotlight on the front left side of his vehicle. When E.H. pulled into the dirt field, he saw a light-colored hatchback vehicle parked in the field and positioned his patrol vehicle between the hatchback and the fifth-wheel trailer where the 911 caller was reportedly located. J.M. also pulled into the field, but before he was even able to put his vehicle in park, the suspect rose up from the passenger side of the hatchback and fired two shots at each of the officers. One of the shots hit the hood of E.H.'s vehicle and ricocheted upward, hitting the windshield. Fearing they would be shot, both E.H. and J.M. took cover and the suspect ducked back down behind the hatchback vehicle.

¶5            J.M. advised via the police radio that they had been in an officer-involved shooting, gave a description of the suspect, and then watched as the shadow of the suspect's legs moved toward the rear of the hatchback vehicle. J.M. called out to E.H. to see if he was hurt but did not hear anything; J.M. then exited his vehicle and positioned himself behind it. At the same time E.H., who was unharmed, retrieved his rifle, exited his vehicle, and stood on the running board of his vehicle in a space between the open driver's door and the body of the vehicle to get a better view of the suspect.

¶6            E.H. and J.M. watched the suspect walk away from the hatchback and across the dirt field, toward a tall wall separating the field from the neighboring housing development. Other officers arrived on the scene almost immediately, and watched the suspect reach the wall and then lie on the ground next to it. The officers established a perimeter around the field to secure the scene and to prevent non-law enforcement personnel from entering or leaving the field. Within a few minutes of the initial shots, a police helicopter arrived on the scene, located the suspect with a spotlight, and scanned the rest of the field with a heat-sensor system to ensure there were no other civilians in the field. Multiple officers, including the air unit, maintained visual contact on the suspect as he moved back and forth in the dirt next to the wall until a SWAT team eventually arrived at the scene and took him into custody. The suspect taken into custody was identified as Appellant.

¶7 After Appellant was taken into custody, Detective Eric Holmstedt conducted separate one-on-one identifications of Appellant with the officer-victims, E.H. and J.M. Detective Holmstedt properly read an admonition to each of the officer-victims before conducting the one-on-one identifications, reminding the victims that they need not feel obligated to identify someone if they felt uncertain. J.M. stated the person in the one-on-one identification had the same build and jeans as the suspect who shot at him, but said he could not identify the person's facial features. E.H. said he was about eighty percent certain that the person in the one-on-one identification was the suspect who shot at him, although he noted the suspect had been wearing a jacket at the time of the shooting. A jacket was later recovered from the scene, along with several hundred rounds of ammunition and multiple firearms.

¶8 Appellant was charged with two counts of aggravated assault as class two dangerous felonies (Counts 1 and 2), two counts of discharge of a firearm at a structure as class three dangerous felonies (Counts 3 and 4), one count of disorderly conduct as a class six dangerous felony (Count 5), and one count of unlawful discharge of a firearm within city limits as a class six dangerous felony (Count 6).[3] The State also alleged several aggravating circumstances, including that the offenses caused emotional harm to the victims and that the victims of Counts 1 and 2 were peace officers engaged in official duties.

¶9 Appellant's counsel timely filed a Notice of Defenses pursuant to Arizona Rule of Criminal Procedure ("Rule") 15.2, listing mere presence, mistaken identification, and insufficiency of evidence as defenses to the charges. Based on the alleged inherently suggestive nature of the one-on-one identifications, Appellant's counsel filed a motion requesting a *Dessureault* hearing challenging the pretrial identification. *See State v. Dessureault*, 104 Ariz. 380 (1969). Following that hearing, the court determined by clear and convincing evidence that both E.H. and J.M.'s identifications were sufficiently reliable.

¶10 Appellant's counsel twice filed motions for Rule 11 competency hearings. The first hearing was on October 4, 2016. After reviewing the written evaluations of two medical experts, the court found Appellant competent to stand trial. Appellant's counsel filed the second Rule 11 Motion on December 4, 2017, asserting Appellant's mental condition had progressively deteriorated since the prior competency

---

[3] The court determined Counts 1-4 were inherently dangerous, and the jury returned a determination that Counts 5 and 6 were also dangerous.

finding. The court held the second Rule 11 hearing on February 13, 2018, and after reviewing three expert's reports, found Appellant competent to stand trial.

**¶11**    Following presentation of the evidence at trial, the jury found Appellant guilty as charged. After weighing the aggravating and mitigating factors, the court sentenced Appellant to 15 years in prison for Counts 1 and 2, and 7.5 years in prison for Counts 3 and 4, all sentences to run concurrently, with 790 days of presentence incarceration credit. Appellant was sentenced to 2.25 years in prison for Counts 5 and 6, to run concurrently with each other but consecutively to Counts 1, 2, 3, and 4. Appellant filed a timely notice of appeal.

## ANALYSIS

**¶12**    We have reviewed the entire record for reversible error and find none. *See Leon*, 104 Ariz. at 300; *Clark*, 196 Ariz. at 537, ¶ 30. The record reflects the proceedings were conducted in compliance with Appellant's constitutional and statutory rights and conformed to the Arizona Rules of Criminal Procedure. Appellant was represented by counsel at all stages of the proceedings, and he was present during all critical stages except where his presence was explicitly waived or where he refused to attend.

**¶13**    When Appellant's counsel questioned the sufficiency of the pretrial identification, the court properly held a *Dessureault* hearing and found the officer-victims' identifications were sufficiently reliable. The court also conducted two Rule 11 competency hearings, and Appellant was found to be competent to stand trial at the conclusion of each such hearing.

**¶14**    The State presented sufficient evidence to support Appellant's convictions for all counts, and the jury was properly comprised of twelve members. There was no evidence of jury misconduct or deadlock, and the court properly instructed the jury on the elements of the charges, the State's burden of proof, the presumption of innocence, and the need for a unanimous verdict. The jury returned a unanimous verdict, and the court ultimately imposed legal sentences for the crimes of which Appellant was convicted.

**¶15**    Upon filing of this decision, Appellant's counsel shall inform Appellant of the status of his appeal and of his future options. Counsel has no further obligations unless, upon review, counsel finds an issue that may be appropriately submitted to the Arizona Supreme Court for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). Appellant has thirty days from

the date of this decision to proceed, if he desires, with a *pro per* motion for reconsideration or petition for review.

## CONCLUSION

**¶16**    For the foregoing reasons, we affirm Appellant's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:  AA