NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

BAIDY MOCTAR SY, *Appellant*.

No. 1 CA-CR 21-0489
FILED 3-9-2023

Appeal from the Superior Court in Maricopa County
No. CR2018-108804-001
The Honorable Warren J. Granville, Judge *Retired*
The Honorable Rosa Mroz, Judge *Deceased*

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jennifer Roach
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge David D. Weinzweig joined.

---

**B A I L E Y**, Judge:

¶1        Baidy Moctar Sy appeals his convictions and sentences for armed robbery.  For reasons that follow, we affirm the convictions but modify the superior court's sentencing order.

## FACTS AND PROCEDURAL HISTORY

¶2        In September 2017, Ashley[1] was working the night shift at a Circle K convenience store.  A man entered the store and asked for a cup of water.  While Ashley retrieved the water, another "very big" man walked into the store.  He wore a clown mask, gloves with an Arizona State University ("ASU") logo, a gray hoodie, and black-gray shoes.  The masked man pointed a gun at Ashley with his left hand and demanded the money from the register.  She gave the masked man the money, and he took her phone.  The man who asked her for water then took several packs of cigarettes.  When the two men left together, Ashley pushed the "panic button" and police officers arrived to investigate the robbery.  Video surveillance from the store captured clear images of both men.

¶3        The next night, Martin withdrew money from a Wells Fargo ATM.  While walking back to his car, Martin was approached by two masked men.  The men demanded his money, pointed a gun at him, and threatened, "we know where you live, empty your pockets."  The men were wearing clown masks, gloves, and hoodies.  They took Martin's money, wallet, phone, and keys.  They demanded that Martin withdraw more money from the ATM, but his account was over the daily withdrawal limit. Seeing no additional funds could be withdrawn, the men left the area and Martin called police officers from a nearby store.  Video surveillance from the ATM showed Martin trying to make a second withdrawal and appearing distraught.

---

[1] We use pseudonyms to protect the victims' privacy.  *See* Ariz. R. Crim. P. 31.10(f).

¶4 In the evening a week later, Lisa withdrew money from the same Wells Fargo ATM. When Lisa walked back to her car, a man wearing "a clown or a joker" mask and gloves approached her. She noted that the man was "very tall" and he spoke with an accent. He pointed a gun at her and demanded her belongings. The man took various items from Lisa, including a brown purse and black wallet containing her credit cards. When the man fled the area, Lisa called police officers from a nearby gas station. Later that night, a woman tried to use one of Lisa's credit cards at a pharmacy. Video surveillance from the pharmacy showed that the woman arrived with two men, one wearing a hat and the other wearing a black tank top. A detective recognized the man wearing the hat as Carlos Juarez. Ashley the clerk from the Circle K robbery, later identified Mr. Juarez as the man who asked her for water and took cigarettes.

¶5 Shortly after the robberies, a detective contacted Sy on another matter and observed a pair of gloves with an ASU logo in the backseat of his car. Detectives seized the gloves from the car pursuant to a search warrant. The police also seized Sy's shoes after his arrest. The gloves and shoes appeared consistent with those worn by the masked man in the Circle K robbery. Detectives discovered that another of the third victim Lisa's credit cards had been used to make an online purchase, which listed Sy's mailing address, phone number, and wife, Susana, as the recipient. Through the use of cell phone data, an expert determined that Sy and Juarez were near the location of the robberies during the relevant dates and times.

¶6 When a detective spoke with Susana she confirmed that Sy knew Juarez and the two men often stayed out late in September 2017. Around this time, Susana found a clown mask in their laundry basket and Sy denied that it belonged to him. Sy also gave her a brown purse and black wallet as gifts, claiming he found them. After seeing a news story related to the robberies, Susana grew suspicious and threw the mask and purse away, keeping only the wallet. The detective seized the wallet, which appeared consistent with Lisa's wallet. The detective showed Susana a series of still images from the Circle K and pharmacy video surveillance. In the pharmacy video, Susana identified Sy, Juarez, and Juarez's girlfriend, detailing why their physical characteristics and clothing appeared consistent with the individuals in the images. In the Circle K video, Susana recognized the masked man's hoodie as belonging to Sy, and the clown mask as the one she found in their laundry basket. She also noted that her husband is tall, he speaks with an accent, and is left-handed. Detectives executed a search warrant on the couple's home and located a black tank top consistent with the one worn by Sy in the pharmacy video. Susana confirmed the tank top belonged to him.

¶7            The State charged Sy with three counts of armed robbery, all class 2 felonies, for each date of offense (Counts 1 through 3).  For a portion of time before trial, Sy waived his right to counsel and represented himself with the assistance of advisory counsel.  In this capacity, Sy moved to suppress statements and evidence based on alleged constitutional violations.  The superior court conducted multiple suppression hearings.  In the hearing on the first motion, as relevant here, Sy moved to suppress evidence and statements obtained during the execution of a search warrant on his home, arguing the warrant lacked sufficient probable cause, specificity, and contained misleading statements.  In the hearing on the second motion to suppress, Sy moved to suppress the gloves and argued he did not consent to the initial warrantless search of the car.  Sy's written motions contained lengthy factual summaries and argument, and he conducted extensive witness examination in both hearings.

¶8            In the hearing on the third motion to suppress, Sy moved to suppress statements based on an alleged *Miranda*[2] violation.  For the first time, the superior court advised Sy of his right to testify at a suppression hearing as provided under Arizona Rule of Criminal Procedure ("Rule") 16.2(c).  Sy confirmed that he understood the advisement and voiced no concern that he had not received the admonition before the two previous hearings.  Sy did not testify on his own behalf in any of the three hearings.  After hearing argument and witness testimony, the court denied all of Sy's motions, finding detectives acted lawfully in obtaining statements and evidence.  As trial approached, Sy withdrew his waiver of counsel and asked the court to reappoint counsel.  In the months before trial, Sy's counsel filed several motions but did not seek to revisit the suppression issues.

¶9            While still representing himself, Sy moved to suppress Susana's pretrial identification and requested a *Dessureault*[3] hearing, arguing the pretrial identification procedure was suggestive, she appeared stressed during the interview, and the still images were poor in quality.  Sy attached the still images to the motion for the superior court's review.  The court heard argument on the motion by the parties.  The State explained that Sy's motion pertained to Susana's identification of him in the still images.  The court determined that *Dessureault* did not apply when a witness identifies "somebody she already knows."  Sy argued that the detective showed Susana a blurry image from the pharmacy video, and she gave conflicting information when identifying him.  The court found that

---

2 *Miranda v. Arizona*, 384 U.S. 436 (1966).
3 *State v. Dessureault*, 104 Ariz. 380 (1969).

such facts went to Susana's credibility as a witness and denied the motion without conducting a hearing.

¶10        At trial, Susana testified that she had been interviewed by a detective and watched the recording of that interview.  She remembered providing various details that linked Sy to the robberies, including confirming his relationship with Juarez, recognizing clothing items, and receiving gifts consistent with stolen items.  Susana testified that she identified Sy in the still image from the pharmacy video based on his body type.  When cross-examined about her ability to discern anything from the pixelated or blurry image, Susana responded that she "believed it is him" based on his "body type, the way he slouched, the way he is carrying himself walking."

¶11        After a nine-day trial, the jury found Sy guilty as charged, and found aggravating factors applied.  Before sentencing, the State alleged that Sy had been previously convicted of one count each of kidnapping and armed robbery, class 2 felonies, committed on September 29, 2017, in Maricopa County Superior Court Cause Number CR2017-144951-001 ("2017 case").  This conviction resulted in a term of probation and predated the State's filing of charges in the current case.  The State alleged that the 2017 case constituted one non-historical prior felony conviction under Arizona Revised Statutes ("A.R.S.") § 13-703(A), exposing Sy to the category-one repetitive offender sentencing range for Count 1 and the category-two repetitive offender sentencing range for Counts 2 and 3.  *See* A.R.S. § 13-703(H)–(I).  In the alternative, the State alleged that Counts 1 through 3 constituted multiple offenses not committed on the same occasion under A.R.S. § 13-703(A).  The adult probation department issued a presentence report with a criminal history addendum, which mirrored the State's description of the 2017 case.

¶12        At sentencing, the superior court asked which option the State wished to pursue because the first would require proof of Sy's non-historical prior felony conviction.  The court stated that Sy's exposure would be the same under the State's alternative option, adding that the allegation of multiple offenses would make him "eligible for category-two" for Counts 2 and 3. Sy agreed that both options would yield the same result. The State elected to proceed under its alternative option and did not admit evidence related to the 2017 case.  The court found that, based on the evidence presented at trial, the State proved Sy committed multiple offenses not committed on the same occasion under A.R.S. § 13-703(A).  The

court sentenced Sy as a first-time felony offender for Count 1,[4] imposing a minimum term of four years' imprisonment, and as a category-two repetitive offender for Counts 2 and 3, imposing minimum terms of six years' imprisonment. The court ordered the terms be served consecutively to each other.

¶13         Addressing restitution at sentencing, the superior court noted that it reviewed a letter from Martin requesting $1,150 in restitution, an amount which included $300 for the stolen money. Martin insisted at trial that Sy took "almost $400" from him, conceding that he may have told detectives either $200 or $240 at the scene. The State requested a restitution amount consistent with Martin's letter and trial testimony. Sy stated that he would not stipulate to a restitution amount, but the court could reach a decision based on the information already provided. While the court did not believe it had sufficient information to award the entire amount, the court found that Martin's trial testimony supported an award of $300 for the stolen money. The court left restitution open as to all other requests.

¶14         Sy timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I.      Lack of Rule 16.2(c) Advisement Does Not Warrant Reversal.

¶15         Sy contends that the superior court erred in failing to provide a Rule 16.2(c) advisement at two of his suppression hearings. He argues that his testimony at the hearings could have addressed allegedly "false or incomplete information" in the search warrant for his home, and he could have "offered testimony to challenge the facts supporting the warrant" for the gloves. Because Sy did not raise this issue below, we review only for fundamental error. *See State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018). To prevail under fundamental-error review, Sy bears the burden of showing error occurred, the error was fundamental, and, if the fundamental error was not "so egregious that he could not possibly have received a fair trial," that the error resulted in prejudice. *Id.* at 142, ¶ 21.

---

[4] We find nothing in the record to suggest, as Sy contends, that the superior court sentenced Sy as a category-one repetitive offender for Count 1. The court referred to Count 1 as a "non-repetitive offense" in its oral pronouncement and sentencing order and did not list A.R.S. § 13-703 as the applicable sentencing statute.

¶16        Rule 16.2(c) provides that, if a defendant who is representing himself challenges the constitutionality of the State's evidence, the superior court must inform him of the following:

> (1) the defendant may, but is not required to, testify at a pretrial hearing about the circumstances surrounding the acquisition of the evidence;
> (2) if the defendant testifies at the hearing, the defendant will be subject to cross-examination;
> (3) by testifying at the hearing, the defendant does not waive the right to remain silent at trial; and
> (4) the defendant's testimony at the hearing, including the fact that such testimony occurred, will not be disclosed to the jury unless the defendant testifies at trial concerning the same matters.

Ariz. R. Crim. P. 16.2(c).

¶17        The language of this rule tracks *Simmons v. United States*, 390 U.S. 377, 394 (1968), which held that when a defendant testifies at a suppression hearing based on a fourth amendment claim, then his testimony may not be admitted at trial on the issue of guilt. We have recognized that, at its core, the *Simmons* holding safeguarded a defendant's right "to freely assert fourth amendment claims without sacrificing their fifth amendment privilege against self-incrimination." *State v. Boyd*, 128 Ariz. 381, 383 (App. 1981); *see also State v. Nadler*, 129 Ariz. 19, 21 (App. 1981) (recognizing the constitutional implications of Rule 16.2).

¶18        It is undisputed that the superior court failed to provide the required Rule 16.2(c) advisement at two of Sy's suppression hearings. This failure, however, did not result in reversible error. To reverse would require us to find that the court's failure to inform Sy of his right to testify at the hearings prevented him from receiving a fair trial or resulted in prejudice. Sy failed to meet that burden here. Although we caution courts of their duty to provide Rule 16.2(c) advisements for unrepresented defendants, the record shows that Sy was not prejudiced. He was prolific in filing motions and provided extensive argument. The court allowed him to conduct rigorous witness examination with the assistance of advisory counsel. Sy expressed neither a desire to testify nor surprise when he heard the advisement in a subsequent hearing. On this record we cannot say that, had Sy been properly advised under Rule 16.2(c), he would have exercised his right to testify at the hearings. There is no indication that Sy was

prevented, in any way, from freely asserting his fourth amendment claims without sacrificing his fifth amendment rights. *See Boyd*, 128 Ariz. at 383.

¶19　　　In addition, Sy's assertion that his testimony could have persuaded the superior court to find that the detectives used false information or omitted key details in executing search and seizures is based on speculation. To prevail on a fundamental-error claim, a defendant "may not rely upon 'speculation' to carry his burden." *State v. Dickinson*, 233 Ariz. 527, 531, ¶ 13 (App. 2013) (citation omitted).

## II.　Denial of Request for *Dessureault* Hearing Did Not Constitute Error.

¶20　　　Sy argues the superior court erred in refusing to conduct a *Dessureault* hearing. He argues that his challenge to Susana's pretrial identification procedure as unduly suggestive entitled him to a hearing. We review the superior court's ruling on a pretrial identification for an abuse of discretion. *State v. Moore*, 222 Ariz. 1, 7, ¶ 17 (2009). "But we review de novo the question whether a common law procedural rule with constitutional underpinnings, such as that set forth in *Dessureault*, applies to a particular factual scenario." *State v. Leyvas*, 221 Ariz. 181, 184, ¶ 9 (App. 2009).

¶21　　　Due process requires that pretrial identification procedures be "conducted in a manner that is fundamentally fair and secures the suspect's right to a fair trial." *State v. Lehr*, 201 Ariz. 509, 520, ¶ 46 (2002) (citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)). In *Dessureault*, our supreme court established a process for challenging a pretrial identification procedure that is "significantly suggestive and as such materially increases the dangers inherent in eye witness identification." 104 Ariz. at 383. When such a challenge is presented, the superior court must conduct a hearing to determine whether the procedure was unduly suggestive. *Id.* at 384. We will not, however, set aside a conviction unless it is "based on eyewitness identification at trial following a pretrial identification" that "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons*, 390 U.S. at 384.

¶22　　　Given the emphasis on eyewitness testimony, we have held that the danger of misidentification contemplated in this line of cases is not present when the witness knows the defendant. In *State v. Bush*, 109 Ariz. 487, 490 (1973), the State admitted evidence of a one-on-one pretrial identification by a victim who had known the defendant "for a month prior to the incident and had spent the afternoon drinking" with him. Our

supreme court cautioned the State from using one-on-one identifications at trial but held that "the dangers inherent in this type of confrontation were not present" because the witness and defendant "knew one another." *Id.* While not explicit in the holding, our supreme court declined to extend the safeguards established by *Dessureault* to non-eyewitness identifications. *Id.* Other jurisdictions have held likewise. *See State v. Warner*, 872 S.E.2d 638, 643–44 (S.C. 2022) (declining to extend *Dessureault*-like safeguards to non-eyewitness identifications); *Mahdavi v. State*, 478 P.3d 449, 455, ¶¶ 19–20 (Okla. Crim. App. 2020) (same); *Greene v. State*, 229 A.3d 183, 192–93 (Md. App. 2020) (same); *State v. Felder*, 912 A.2d 1054, 1060–61 (Conn. App. 2007) (same), *overruled on other grounds by State v. Gore*, 269 A.3d 1, 13 (2022).

**¶23**       The facts here involve a wife's pretrial and in-court identification of her husband. Not simply a man she knew for a month prior, but a man she knew intimately. As in *Bush*, no matter how detectives conducted the pretrial identification procedure, the dangers inherent in eyewitness identifications are not present here. Susana had an intimate knowledge of Sy's life during the relevant period. Based on this knowledge, she identified him in the still images by observing his body type, gait, clothing, and individuals she knew to be his associates. This type of identification does not carry the same risk of "irreparable misidentification" as would be associated with an eyewitness identification. *Simmons*, 390 U.S. at 384. The superior court did not err in finding *Dessureault* did not apply and refusing to conduct a hearing.

**¶24**       To the extent that Sy contends that, even without a hearing, the superior court should have suppressed Susana's pretrial identification as unduly suggestive, we find no error. As noted by the superior court, under these facts, any issue with the pretrial identification procedure went to the weight of the evidence, not its admissibility. *See State v. Rojo-Valenzuela*, 237 Ariz. 448, 451, ¶ 11 (2015) (recognizing that "trial is the place for the defense to question weaknesses" in a witness' ability to make an identification).

### III.    Sentencing Error Does Not Require Remand.

**¶25**       Sy claims the superior court erred in sentencing him as a category-one repetitive offender for Count 1 and a category-two repetitive offender for Count 2. The State concedes that error occurred but asks this court to correct the sentencing order without remanding for resentencing. Sy did not object below, so we review only for fundamental error. *See Escalante*, 245 Ariz. at 140, 142, ¶¶ 12, 21. A court imposes an illegal sentence, thereby committing fundamental error, when it applies the

sentencing statute incorrectly. *State v. Cox*, 201 Ariz. 464, 468, ¶ 13 (App. 2002).

**¶26**　　　　Under A.R.S. § 13-703(A), "[i]f a person is convicted of multiple felony offenses that were not committed on the same occasion but that either are consolidated for trial purposes or are not historical prior felony convictions, the person shall be sentenced as a first time felony offender pursuant to section 13–702 for the first offense, as a category one repetitive offender for the second offense, and as a category two repetitive offender for the third and subsequent offenses."[5]　A prior felony conviction for a subsequent offense is considered non-historical under this statute. *Id.*; *see also State v. Smith*, 228 Ariz. 126, 129–31, ¶¶ 12–18 (App. 2011).　The sentencing range for a first-time felony offense and a category-one repetitive offense are the same, except that a first-time felony offense is probation eligible.　*See* A.R.S. §§ 13-702 (imprisonment discretionary); -703(O) (imprisonment mandatory).

**¶27**　　　　To enhance a defendant's sentence with a prior felony conviction under A.R.S. § 13-703, the State must prove, or the defendant must admit to, the existence of the conviction. *State v. Morales*, 215 Ariz. 59, 61, ¶¶ 6–7 (2007).　Absent any valid admission or presentation of evidence, the imposition of an enhanced sentence is fundamental error. *Id.* at 61–62, ¶¶ 6–10.　The typical remedy would be to remand for "a resentencing hearing at which the state will be put to its burden of proving the prior conviction." *Id.* at 62, ¶ 13.　We need not remand, however, where the record conclusively establishes the existence of the prior felony conviction. *Id.*

**¶28**　　　　Here, the superior court and the parties mistakenly believed that the available sentencing options under A.R.S. § 13-703(A) would lead to the same result. In an apparent attempt to expedite sentencing, the court found Counts 1 through 3 constituted multiple offenses not committed on the same occasion based on the evidence presented at trial.　This option, however, required the court to treat Count 1 as a first-time felony offense, Count 2 as a category-one repetitive offense, and Count 3 as a category-two repetitive offense. *See* A.R.S. § 13-703(A).　Instead, the court sentenced Sy to a category-two repetitive offense for Count 2.

**¶29**　　　　Although the superior court's misapplication of the sentencing statute resulted in error, we are not persuaded that a remand for

---

[5] We cite to the version of the statute in effect at the time of the offenses. *See* 2016 Ariz. Sess. Laws, ch. 43, § 2; *see also* A.R.S. § 1-246 ("[O]ffender shall be punished under the law in force when the offense was committed.").

resentencing is necessary. The existence of Sy's non-historical prior felony conviction in the 2017 case can be conclusively gleaned from the record. Aspects of the 2017 case were undisputed at sentencing, with the parties discussing Sy's previous grant of probation in that case. Although not formally proven, details of the 2017 case were listed multiple times in the presentence report and its criminal history addendum. Sy did not object to the presentence report below, nor does he challenge its accuracy on appeal. An unopposed presentence report containing a defendant's criminal history "conclusively precludes prejudice." *State v. Gonzales*, 233 Ariz. 455, 458, ¶ 11 (App. 2013) ("A defendant who fails to object to the contents of a presentence report has waived objections as to the accuracy and completeness of the report.").

**¶30** Moreover, we can ascertain the superior court's intent from the record and need not remand for clarification. *See State v. Lopez*, 230 Ariz. 15, 18, ¶ 9 n.2 (App. 2012). The court did not express any desire to grant probation in Count 1, imposing a sentencing range identical to that of a category-one repetitive offense. The court intended to treat the remaining counts as category-two repetitive offenses, simply believing the chosen option would avoid the need for a showing of proof. Based on this record, we find Sy's non-historical prior felony conviction in the 2017 case conclusively established by the record and modify the sentencing order in accordance with A.R.S. § 13-703(A).

**¶31** The modified sentencing order must reflect that (1) Sy has one non-historical prior felony conviction from the offenses committed in Maricopa County Superior Court Cause Number CR2017-144951-001; (2) the non-historical prior felony conviction is the first offense for purposes of A.R.S. § 13-703(A); (3) Count 1 is the second offense and constitutes a category-one repetitive offense under A.R.S. § 13-703(A) and (H); and (4) Counts 2 and 3 are the third and subsequent offenses and constitute category-two repetitive offenses under A.R.S. § 13-703(A) and (I). Nothing in this decision, or modified sentencing order, impact the length of Sy's terms of imprisonment.

## IV. Failure to Conduct Restitution Hearing Did Not Constitute Error.

**¶32** Sy argues the superior court erred in awarding the victim restitution without conducting a hearing. We review an unobjected-to restitution order for fundamental error. *State v. Leal*, 248 Ariz. 1, 2, ¶ 4 (App. 2019). We view all facts and reasonable inferences from them in the light most favorable to upholding the superior court's restitution order. *State v. Lewis*, 222 Ariz. 321, 323, ¶ 2 (App. 2009).

¶33 Arizona's Constitution entitles crime victims to "prompt restitution from the person or persons convicted of the criminal conduct that caused the victim's loss." Ariz. Const. art. 2, § 2.1(A)(8). The superior court is therefore required to award victims restitution for the full economic loss suffered because of a defendant's actions. A.R.S. § 13–603(C). The final restitution amount ordered "may be supported by evidence or information introduced or submitted to the court before sentencing or any evidence previously heard by the judge during the proceedings." A.R.S. § 13–804(I). "So long as the procedure leading to a restitution award is such that [a] defendant is given the opportunity to contest the information on which the restitution award is based, to present relevant evidence, and to be heard, due process is satisfied." *State v. Fancher*, 169 Ariz. 266, 268 (App. 1991).

¶34 The superior court properly considered Martin's trial testimony, along with his letter, in awarding restitution at sentencing. Martin avowed several times at trial that Sy took close to $400 from him, conceding that he may have told detectives $200 or $240. The final restitution amount of $300 fell between the estimate given at trial and the estimate given directly after the robbery. With no explicit objection by Sy as to the amount requested, the court did not err in ordering a restitution amount supported by trial testimony and information submitted at sentencing. *See* A.R.S. § 13–804(I). We find no error, fundamental or otherwise.

**CONCLUSION**

¶35 For the foregoing reasons, we affirm Sy's convictions and sentences, but we modify the superior court's sentencing order consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED: AA